## PEOPLE v WELLS

Docket No. 77-1772. Submitted June 19, 1978, at Detroit.—Decided
December 5, 1978.

Nathan Wells was charged with first-degree murder. Part of the
evidence presented at trial was the testimony of a police officer
concerning a confession which the defendant had made to the
officer. Pursuant to a jury verdict, the defendant was convicted
of second-degree murder, Recorder's Court of Detroit, Harold
Hood, J. Defendant appeals, alleging that the trial court erred
by denying the defendant's motion for a directed verdict of
acquittal on the first-degree murder charge, and by instructing
the jury on both first- and second-degree murder. *Held:*

1. The corpus delicti of an offense must be established by
evidence independent of the confession of the accused. In this
case, although there was a strong circumstantial inference that
the defendant caused the victim's death, there was no evidence,
other than the confession, by which the jury could reasonably
have inferred the existence of premeditation. Therefore, the
trial court's denial of defendant's motion for a directed verdict
of acquittal of first-degree murder was error.

2. Because the jury was improperly instructed on first-degree

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 1136-1138, 1142, 1173.
    40 Am Jur 2d, Homicide §§ 284, 285.
    Corroboration of extra judicial confession or admission. 45 ALR2d
    1316.
[2] 30 Am Jur 2d, Evidence §§ 1140-1142.
    40 Am Jur 2d, Homicide §§ 284, 385.
    Corroboration of extra judicial confession or admission. 45 ALR2d
    1316.
[3, 4] 29 Am Jur 2d, Criminal Law §§ 266, 363, 364.
    75 Am Jur 2d, Trial § 424.
    40 Am Jur 2d, Homicide §§ 439, 472.
    Presumption of deliberation or premeditation from the circum-
    stances attending the killing. 96 ALR2d 1435.
[5] 40 Am Jur 2d, Homicide §§ 280, 282, 426, 438, 439, 472, 498 et seq.
    75 Am Jur 2d, Trial §§ 548-558, 1139.
    Presumption of deliberation or premeditation from the circum-
    stances attending the killing. 96 ALR2d 1435.
[6] 75 Am Jur 2d, Trial §§ 548-558, 1139.

murder, thereby creating the possibility that the jury invalidly reached a compromise verdict, the case must be remanded for a new trial.

Reversed and remanded.

1. CRIMINAL LAW—CORPUS DELICTI—CONFESSION OF ACCUSED.

The corpus delicti of an offense must be established by evidence independent of the confession of the accused.

2. CRIMINAL LAW—CORPUS DELICTI—EVIDENCE—ELEMENTS OF OFFENSE.

The corpus delicti of an offense is not established until the people have introduced evidence from which the trier of fact may reasonably find that acts constituting all the essential elements of the offense have been committed and that someone's criminality was responsible for the commission of those acts.

3. CRIMINAL LAW—PREMEDITATION—REQUIREMENTS.

Premeditation requires a showing that the perpetrator of a crime had sufficient time to think about his actions before the commission of the crime and to evaluate the consequences and alternatives.

4. CRIMINAL LAW—PREMEDITATION—INFERENCES—CIRCUMSTANTIAL EVIDENCE.

Premeditation can be established from reasonable inferences drawn entirely from circumstantial evidence.

5. HOMICIDE—CRIMINAL LAW—DIRECTED VERDICT OF ACQUITTAL— FIRST-DEGREE MURDER—PREMEDITATION.

A trial court erred in denying a defendant's motion for a directed verdict of acquittal of first-degree murder where, absent testimony regarding the defendant's confession, there was no evidence by which the jury could reasonably have inferred the existence of premeditation.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—PREJUDICE—COMPROMISE VERDICT—DIRECTED VERDICT OF ACQUITTAL.

There is always prejudice where a jury is permitted consideration of a charge unwarranted by the proofs because a defendant's chance of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict; for this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *H. Gail McKnight,* Assistant Prosecuting Attorney, for the people.

*Bernstein, Rabinovitz & Weitzman, P.C.,* for defendant on appeal.

Before: D. C. RILEY, P.J., and M. F. CAVANAGH and B. M. HENSICK,* JJ.

D. C. RILEY, P.J. The present matter concerns a single issue; *i.e.,* whether the prosecution's case in chief established the corpus delicti of first-degree, premeditated murder absent the introduction of defendant's confession.

Defendant Nathan Wells was charged with first-degree murder, contrary to MCL 750.316; MSA 28.548. Following a jury trial, he was convicted of second-degree murder, MCL 750.317; MSA 28.549, and sentenced to life imprisonment. For the purposes of the issue on appeal, the testimony presented at defendant's trial will be set forth in some detail.

The victim's husband testified that he and his wife were separated. On Friday, November 12, 1976, he called his wife's apartment and spoke to defendant, who stated that the wife was not at home at that time. The following day the witness again called the apartment and this time did speak to his wife. The next evening the witness drove to his wife's apartment, where he discovered her body in the bedroom. A second witness testified that he accompanied the victim's husband to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the apartment and corroborated the testimony concerning the discovery of the body.

The decedent's mother testified that she, the victim's grandmother, and defendant (who is this witness's cousin) went to the apartment on November 12, 1976, to help the victim pack. The mother testified that when she and the grandmother left to go home the defendant remained at the apartment with the decedent. The grandmother (defendant's aunt) testified to these same facts.

Several police officers testified as to the condition of the body and of the apartment, and as to the investigation of the scene. Several items of evidence were removed from the apartment and blood samples were taken. Subsequently, defendant's fingerprint was found on a candlestick that had been removed from the apartment.

A doctor from the Wayne County Medical Examiner's Office testified that the autopsy revealed that the decedent had sustained two stab wounds and multiple abrasions to the head and neck area. There was also evidence that the victim had been sexually assaulted.

A serologist from the police crime lab testified that traces of blood were found on three of four knives that were discovered soaking in a pan of water in decedent's kitchen and that traces of hair matching defendant's were found on a washcloth in the apartment.

A medical technologist testified that tests were performed on a sample of seminal fluid taken from the victim's body and on a sample of defendant's saliva, the results of which did not exclude defendant as a possible source of the seminal fluid.

Following these witnesses, the prosecution presented the testimony of a police officer who had taken a statement from defendant. In the state-

ment defendant admitted choking the decedent and, believing her to be dead, having intercourse with her and then inflicting the stab wounds.

At the conclusion of the prosecution's case, defendant moved for a directed verdict of acquittal of first-degree murder. The motion was denied and the court eventually instructed on both first- and second-degree murder.

It is a long-standing rule of law in Michigan that the corpus delicti of an offense must be established by evidence independent of the confession of the accused. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), *People v Kirby,* 223 Mich 440; 194 NW 142 (1923), *People v Lane,* 49 Mich 340; 13 NW 622 (1882), *People v Allen,* 39 Mich App 483, 486 fn 2; 197 NW2d 874 (1972).

Prior to the Supreme Court's decision in *Allen, supra,* the corpus delicti of murder was established by "proof of the dead body and evidence of an unnatural cause of death". *People v Allen,* 39 Mich App at 487. See *People v Jackzo,* 206 Mich 183; 172 NW 557 (1919), *People v Jackson,* 1 Mich App 207; 135 NW2d 557 (1965). The majority opinion of this Court in *Allen, supra,* adhering to the traditional rule, held that the corpus delicti of felony murder did not require proof of the underlying felony independent of the defendant's confession.

The Supreme Court in *Allen, supra,* reversed, adopting Judge (now Justice) LEVIN's dissent in the Court of Appeals' *Allen* decision. 390 Mich at 385–386. In his dissent, Judge LEVIN made a comprehensive argument that the corpus delicti of any offense requires proof on each of the essential elements of that offense:

"Whatever may be the correct etymological definition

of the term *'corpus delicti,'* and, although there are quotations in Michigan cases from other authorities to the effect that the *corpus delicti* of an offense is established upon showing a specified *injury* and someone's criminality as the source of the injury, the law in this state is clear that the *corpus delicti* of an offense is not established until the people have introduced evidence from which the trier of fact may reasonably find that acts constituting *all the essential elements* of the offense have been committed and that someone's criminality was responsible for the commission of those acts." (Footnote omitted.) 39 Mich App at 495–496.

Consistent with this argument, Judge LEVIN concluded that the corpus delicti of first-degree murder, including the element which distinguishes the charge from second-degree murder, must be established *aliunde* the confession:

"Just as the people must establish with evidence the essential element distinguishing second-degree murder from first-degree murder in order to convict an accused person of the aggravated offense, so, too, in order to prove the *corpus delicti,* that distinguishing element must be established by evidence independent of the accused person's confession. Otherwise the policy underlying the rule requiring that *all* the elements of the offense be established independently of a confession— consistently enforced in many Michigan cases—would be eroded in the category of cases where the stakes are the highest, where the accused person has the most to lose and where one would think that the law would be the most solicitous of his rights." (Footnote omitted.) 39 Mich App at 503–504.

Although we read the *Allen* rule set forth in Judge LEVIN's dissent as applying to all criminal charges, one panel of this Court held that the decision was limited to felony murder, the specific charge in *Allen.* In *People v Sparks,* 53 Mich App 452; 220 NW2d 153 (1974), the Court stated:

"The requirement of independent proof is to assure that an accused not be convicted on the basis of his confession to a nonexistent crime. Proof of unnatural death provides that protection. *People v Allen, supra* [390 Mich 383; 212 NW2d 21 (1973)]. Defendant quotes this case and, while seeming to support defendant's contentions, *Allen* is distinguishable. The decision there was only that the element of an underlying felony must be proved without defendant's confession in a felony-murder case. *Allen* leaves intact the present body of corpus delicti law regarding other first-degree murder." 53 Mich App at 459.

The Supreme Court denied Sparks' application for leave to appeal, but worded the denial in such a manner as to cast doubt on the viability of the *Sparks* Court's limitation of the *Allen* rule:

"On order of the Court, the application for leave to appeal is considered, and the same hereby is denied, because the appellant has failed to persuade the Court that the questions presented should be reviewed by this Court. In denying leave, this Court does not wish to be understood as accepting the distinction between felony and premeditated murder in the application of the rule enunciated in *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), drawn by the Court of Appeals in deciding this case." *People v Sparks,* 393 Mich 135; 224 NW2d 481 (1974).

We hold, given the Supreme Court's position, that the Court of Appeals' *Sparks* decision erroneously limited the *Allen* corpus delicti rule. The language of Judge LEVIN's dissent was not confined solely to the felony element of felony-murder. In addition, the *Sparks* Court, while applying their distinction, nevertheless went on to hold that under the facts of that case premeditation could

reasonably have been inferred absent the confession.[1]

The most recent case from this Court also disagrees with the *Sparks* opinion. In *People v Hawkins,* 80 Mich App 481; 264 NW2d 33 (1978), it was held that the corpus delicti of first-degree premeditated murder requires a showing of premeditation independent of a confession. See also *People v Juniel,* 62 Mich App 529, 536 fn 3; 233 NW2d 635 (1975).

Applying the *Allen* corpus delicti rule to the case at bar, our task is to determine if the evidence presented at defendant's trial, absent his confession, established the essential element of premeditation.

Premeditation requires a showing that the perpetrator had sufficient time to think about his actions before the commission of the crime and evaluate the consequences and alternatives. *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971). Premeditation can be established from reasonable inferences drawn entirely from circumstantial evidence. *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), *People v Jesse Smith,* 81 Mich App 190; 265 NW2d 77 (1978).

While the testimony presented in the case at bar, absent the confession, created a strong circumstantial inference that defendant caused the victim's death, we find lacking any evidence by which the jury could reasonably have inferred the existence of premeditation. See *People v Hawkins, supra.* Apart from the confession there was no evidence regarding the actual commission of the

---

[1] This factual holding may have been the reason that the Supreme Court, although apparently in disagreement with the legal discussion, denied the application for leave. *See People v Hawkins,* 80 Mich App 481, 485 fn 2; 264 NW2d 33 (1978).

offense. There was no evidence of prior threats or ill feelings between defendant and the deceased, no evidence of any suspicious or inculpatory conduct by defendant, either before or after the crime, and no evidence that defendant arranged the circumstances or intentionally procured a weapon to effectuate the crime. See *People v Jesse Smith, supra* at 199–200.

The prosecution argues that the nature and number of the victim's injuries is circumstantial evidence that defendant planned the crime. This precise argument has been rejected by the Supreme Court:

"*Hoffmeister* moved for a directed verdict, arguing that 'there is no evidence from any witness that [Hoffmeister] did form or did any act with premeditation'.

"The prosecutor responded that 'the nature of the wounds, [and] the number of wounds' inflicted on the deceased together with his 'several moments with' her were sufficient facts from which the jury could reasonably infer premeditation and deliberation.

"The brutality of a killing does not itself justify an inference of premeditation and deliberation. 'The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant [on the issue of premeditation and deliberation], as such a killing is just as likely (or perhaps more likely) to have been on impulse.' " (Citation omitted.) *People v Hoffmeister, supra* at 159.

Accordingly, we conclude that there was insufficient evidence presented to establish the required element of premeditation absent defendant's confession. The trial court thus erred in denying defendant's motion for a directed verdict on first-degree murder. *People v Hoffmeister, supra.* Even though defendant was eventually convicted of second-degree murder, a new trial is mandated since

the jury was improperly instructed on first-degree murder, creating a possibility that the jury invalidly compromised their verdict. *People v Vail, supra.*[2]

Reversed and remanded.

JUDGE HENSICK concurs in the above opinion only because of the wording of the Supreme Court's denial of leave to appeal in *People v Sparks,* 393 Mich 135; 224 NW2d 481 (1974). He specifically approves the reasoning as set forth in the Court of Appeals decision in *People v Sparks,* 53 Mich App 452; 220 NW2d 153 (1974).

---

[2] "Thus, where a jury is permitted consideration of a charge unwarranted by the proofs there is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict. For this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged." *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975).